Connie Gail Landers SWAILS, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–97–00010–CR.

Court of Appeals of Texas,
San Antonio.

Jan. 6, 1999.

Jacquelyn L. Snyder, Adkins, for Appellant.

E. Bruce Curry, District Attorney, Lucy Cavazos, Assistant District Attorney, Kerrville, for Appellee.

Before TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice and SARAH B. DUNCAN, Justice.

SARAH B. DUNCAN, Justice.

Connie Gail Landers Swails was convicted of capital murder and sentenced to life in prison. She appeals, contending the trial court erred in admitting two psychiatric reports relied upon by her expert witness and in refusing three requested jury instructions regarding duress. Swails also argues the trial court's findings of fact regarding the voluntariness of her oral and written confessions are not sufficiently specific. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

One evening in 1994, Connie Landers was beaten by her boyfriend, Kevin Swails, because she had no money to give him. Later, the couple went driving. During the drive, Kevin told Connie they were going to rob and kill an old man because Kevin wanted his money and guns. After this conversation, the couple drove to Waldo Blanke's house and parked their car in front of his door. While Connie sat in the car, Kevin knocked on the door. Blanke answered, and Connie heard Kevin tell Blanke "we're going to play a game old man" and then saw Kevin shock Blanke with a 2000 volt stun gun and begin pushing and hitting him repeatedly. Connie, still in the car, heard Blanke saying "oh God, Kevin, oh God."

At first, when Kevin yelled at her to come inside, Connie did nothing. But then Kevin yelled that he would kill her if she did not come inside. Connie walked inside and, when Kevin told her to get something with which to strangle Blanke, she gave him a radio she found on a nearby table. As Connie watched, Kevin hit Blanke in the head with the radio, pushed him onto the couch, and fell with him onto the floor. Connie then saw Kevin put the radio cord around Blanke's neck and pull on one end of the cord. Connie held the other end with her knee. After Blanke died, Kevin grabbed some guns, jewelry, and money; wrapped the guns in a blanket; and told Connie to take the guns to the car. She did so, and the couple left. Several days later they married.

Nine months after Blanke's death, Kevin was arrested on another charge and confessed to his role in murdering Blanke. In his confession, Kevin implicated Connie and she too was arrested. In subsequent oral and written statements, Connie admitted her participation in the burglary and Blanke's murder and was charged with capital murder. Before trial, Connie moved to suppress her oral and written statements because, she argued, they were involuntary. After an evi-

dentiary hearing, the trial court concluded Connie made the statements voluntarily and later admitted them at trial over Connie's objection.

Connie's defense was duress, and she called a family violence expert to testify on her behalf. In this expert's opinion, at the time of Blanke's murder, Connie's fear of Kevin's threats was very real because he had previously stalked, physically assaulted, and threatened her; Kevin presented a threat of death or serious bodily injury to Connie; and a person of reasonable firmness might not have been able to resist his efforts to obtain her participation in the burglary and Blanke's murder. The jury rejected Connie's duress defense and returned a verdict finding her guilty of capital murder. The trial court sentenced Connie to life in prison, and she appealed.

### THE PSYCHIATRIC REPORTS

In her first two points of error, Swails argues the trial court abused its discretion in admitting two psychiatric reports relied upon by her family violence expert because the reports contain an impermissible comment on her failure to testify and constitute inadmissible hearsay. We disagree.

### Standard of Review

We review evidentiary rulings under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (on rehearing). A trial court does not abuse its discretion if its "ruling was at least within the zone of reasonable disagreement." *Id.* at 391.

### Comment on Failure to Testify

The Fifth Amendment to the United States Constitution, section 10 of article I of the Texas Constitution, and article 38.08 of the Texas Code of Criminal Procedure prohibit the State from commenting on a defendant's failure to testify in a manner that invites the jury to construe the defendant's silence as evidence of guilt. U.S. CONST. amend. V; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 38.08 (Vernon 1979); *see, e.g., Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). However, in addressing a complaint of this nature, we view the comment from the jury's standpoint, and "[t]he fact that the language might be construed as an implied or indirect allusion to a defendant's failure to testify is not sufficient." *Goff v. State*, 931 S.W.2d 537, 548 (Tex.Crim.App.1996).

Swails' complaint at trial centered upon a sentence in Dr. Richard Coons' report regarding her competency to stand trial. This report, like Coons' earlier report regarding her sanity at the time of the offense, was admitted after the State's cross-examination of Swails' expert revealed she had relied on the reports in forming her opinions in the case. The complained-of sentence is located in the next to last paragraph in the second report:

> It is my opinion that Connie Swails is presently competent to stand trial in that she is able to consult with her lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against her. Mrs. Swails had an adequate understanding of the functions of judge, jury, defense attorney, and prosecutor as well as the possible penalty which she could receive if she were found guilty of the charges against her. *She indicated that it was her intention to testify in the trial and tell the truth that she did not voluntarily participate in the robbery or the killing of the victim.*

(emphasis added). The State asked no questions regarding this part of the report and made no reference to it during its closing argument.

Contrary to Swails' assumption, we do not believe a jury would have necessarily interpreted this sentence as a comment on her failure to testify or an invitation by the State to interpret her silence as evidence of guilt. Rather, the sentence merely reflects that, at the time Swails' competency was evaluated, she stated she planned to testify in accordance with her oral and written statements and explain that her participation in Blanke's murder was involuntary, just as her expert testified. Accordingly, assuming this sentence can be attributed to the State, we hold

it can at most be "construed as an implied or indirect allusion" to Swails' failure to testify at trial and therefore "not sufficient" to constitute an impermissible comment. *See Goff,* 931 S.W.2d at 548.

### Inadmissible Hearsay and Rule 705(d)

In her second point of error, Swails contends the trial court erred in admitting the Coons reports because they were inadmissible hearsay. Additionally, in the combined argument under her first two points of error, Swails argues the trial court erred in admitting the reports under Rule 705(d) of the Texas Rules of Criminal Evidence, which provides the standard for disclosing the facts and data underlying an expert's opinion or inference when the facts and data are inadmissible "for any purpose other than to explain or support the expert's opinion or inference." TEX.R.CRIM. EVID. 705(d). However, as the State points out, Swails did not object to the Coons reports as inadmissible hearsay. Nor, so far as we can discern, did she object to the reports under Rule 705(d):

> Ms. Snyder: At this point, Your Honor, I would object to the introduction of both [reports]. First of all, *the proper predicate has not been laid. Dr. Coons is not here to testify.*
>
> Also, your Honor, in addition to that, I believe most importantly there's some information in here, particularly I direct your attention to the last page, page 3 of it. That's the competency report, and that refers to Ms. Swails' intention to testify or not to testify. I believe that would put Ms. Swails in the intangible [sic] position of having her constitutional right she has not waived by seeing a court-appointed psychiatrist to determine competency. At that point, *it would be a comment on her not testifying, if she should choose not to testify at this trial.*
>
> Also, I don't know if this has any other relevancy concerning at least some of the information in here to cross-examine, but as far as the introduction of the statements, these statements, themselves, I think they would be highly prejudicial.

We will also argue *under Rule 403 of the Texas Rules of Criminal Evidence any probative value that could conceivably be in there would be outweighed by judicial effect of constitutional statute* [sic].

> The Court: What I have a problem with, Jackie, is you can make the decision on what you send to your expert for him to review.
>
> Ms. Snyder: That's correct.
>
> The Court: And the testimony is from her that you sent these things to her for her to review, and she—her evidence is based on your client's interview and based on this, and I think that the jury is entitled to see what she based her opinion on. Do you have—and if you didn't want the jury to see this, you don't have to let your expert see this document. They could base it on other things or you could have edited whatever you want to edit out.
>
> Ms. Snyder: We would request in the alternative, if the Court is requesting—admitting these documents, that part of it be left off, perhaps the reference to testifying.
>
> The Court: I don't know whether or not those items you want to have blocked off had something to do with her opinion. If you wanted it to be blocked off, you could have, but you gave it the whole thing.
>
> Ms. Snyder: Your Honor, at that point it's privileged communication between the attorney and expert retained; however, therefore, I chose not to block off any part, based on simply constitutional statute whether she would testify or not.
>
> I believe there's no probative value, whatsoever, in the whether she's going to testify or not referred to in there, in Dr. Coons' report, and, therefore, we would indicate that it might be relevant; the prejudicial effect would outweigh any probable probative value, and we would request, at the very least, the Court, first of all, not admit the statements, and, secondly, that if the Court

does decide to do admit them, to block off that section.

The Court: I'm going to admit [the reports]. .... All right, the objections are overruled, Ms. Snyder, and [the reports] are admitted.

As demonstrated by this excerpt, Swails did not attempt to argue the Coons reports and the statements attributable to Swails in the reports were hearsay and therefore inadmissible "to prove the truth of the matter asserted." TEX.R.CRIM. EVID. 801(d). Nor did she attempt to argue the reports were inadmissible "for any purpose other than to explain or support the expert's opinion or inference" and their value in this regard was outweighed by "the danger that they will be used for an improper purpose." TEX.R.CRIM. EVID. 705(d). Rather, Swails objected to the Coons reports because (1) the proper predicate had not been laid since the author of the reports was not then testifying, an all-encompassing complaint that, in context, appears directed at the witness' competency to testify, *see* TEX.R.CRIM. EVID. 602, or the authentication or identification of the reports, *see* TEX.R.CRIM. EVID. 901; (2) the reports contained an impermissible reference to Swails' failure to testify; and (3) the probative value of the statement regarding Swails' intention to testify was outweighed by its prejudicial value. *See* TEX.R.CRIM. EVID. 403. Swails' first and third objections have thus not been brought forward on appeal, and her second objection has been considered and rejected.

■ In short, the evidentiary rules and standards Swails now argues on appeal were not presented to the trial judge. As a result, we cannot say the trial court abused its discretion in admitting the reports in contravention of them. *See* TEX.R.APP. P. 33.1(a); *Carmona v. State,* 941 S.W.2d 949, 953 (Tex. Crim.App.1997); *Broxton v. State,* 909 S.W.2d 912, 918 (Tex.Crim.App.1995); *Garcia v. State,* 887 S.W.2d 862, 874 (Tex.Crim. App.1994), *cert. denied,* 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995). More-over, even if we were to consider these complaints preserved, we believe the trial court could reasonably have decided Swails failed to make the showing required by Rule 705(d), that is, the danger the jury would use the reports for an improper purpose was not outweighed by their value in explaining a basis for Swails' expert's opinions. Therefore, the trial court's decision to admit the Coons reports was within the zone of reasonable disagreement and not an abuse of discretion. Consequently, we overrule Swails' first and second points of error.

### DURESS

■ In her next three points of error, Swails argues the trial court erred in refusing three jury instructions regarding duress. The State counters any error was necessarily harmless because duress was not raised by the evidence.

■ A defendant is entitled to a charge on any defensive theory raised by the evidence, whether it is "strong or weak, unimpeached or contradicted." *Hayes v. State,* 728 S.W.2d 804, 807 (Tex.Crim.App.1987). To raise the defense of duress, there must be some evidence the defendant "engaged in the proscribed conduct because he was *compelled* to do so by threat of *imminent* death or serious bodily injury to himself or another." TEX. PEN.CODE ANN. § 8.05(a) (Vernon 1994) (emphasis added).

■ A defendant is "compelled" to engage in proscribed conduct "only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure." *Id.* § 8.05(c). And the threatened death or serious bodily injury is "imminent" only if it will occur in the present, not in the future. *See Devine v. State,* 786 S.W.2d 268, 270 (Tex.Crim.App.1989) (interpreting "imminent" in the context of robbery as requiring present, not future, threat).[1] Thus duress is not raised if evi-

---

1. *See also Bryant v. State,* 905 S.W.2d 457, 459 (Tex.App.—Waco 1995, pet. ref'd) (interpreting "imminent" in the context of the terroristic threat statute to mean " 'impending' or 'close' or 'on the point of happening' or 'near at hand' "); *Hill v. State,* 844 S.W.2d 937, 938 (Tex.App.— Eastland 1992, no pet.) (interpreting "imminent" in the context of aggravated assault as "on the verge of happening"); BLACK'S LAW DICTIONARY 676 (5th ed.1979) ("imminent" means "[n]ear at hand; ... impending; on the point of happening; threatening; menacing; perilous."); WEB-

dence establishes the defendant "intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion." TEX. PEN.CODE ANN. § 8.05(d).

Swails argues she was compelled to enter Blanke's house because Kevin threatened to kill her if she did not, and her expert's testimony establishes she legitimately feared Kevin would hunt her down and harm or kill her. However, these statements are not evidence Connie was *compelled* to enter the house by a threat of *imminent* death or serious bodily injury. To the contrary, Swails admitted in her oral and written statements she knew before she and Kevin arrived at Blanke's house that Kevin intended to rob and kill Blanke; she knew Kevin entered the house with only a stun gun; and there was some period of time in which she sat alone in the car—outside the reach of Kevin and the stun gun after Kevin began his attack on Blanke at the front door and after Kevin went inside the house and continued the attack. But instead of taking this opportunity to leave the scene, Connie walked inside the house to a man she knew was not only capable of threatening her but who had in fact beaten her earlier in the day and who was in the process of robbing and killing an old man. Under these circumstances, we hold there is no evidence raising duress. *See* TEX. PEN.CODE ANN. § 8.05. If Kevin's threat is construed to mean he would hunt Swails down and kill her if she did not go inside Blanke's house, it was a threat of future, not imminent, harm. Accordingly, any error in the jury charge on duress was harmless beyond a reasonable doubt. *See* TEX.CODE CRIM. PROC. ANN. art 36.19 (Vernon 1981); *Ex parte Green*, 548 S.W.2d 914, 917 (Tex.Crim.App.1977). We therefore overrule Swails' third through fifth points of error.

### SUFFICIENCY OF FINDINGS OF FACT REGARDING VOLUNTARINESS OF CONFESSIONS

■ In her sixth point of error, Swails argues the trial court's findings of fact re-

garding the voluntariness of her confessions violate section 6 of article 38.22 of the Texas Code of Criminal Procedure because they are not sufficiently specific to allow appellate review of the trial court's application of the law to the facts.

■ The findings required by section 6 of article 38.22 of the Texas Code of Criminal Procedure "should resolve the disputed fact issues upon which the grounds of error are based." *Sinegal v. State*, 582 S.W.2d 135, 137 (Tex.Crim.App. [Panel Op.] 1979 ); *see Wicker v. State*, 740 S.W.2d 779, 783 (Tex. Crim.App.1987), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 278 (1988). Necessarily, therefore, if the appellant does not contend the trial court erred either in resolving a disputed fact issue material to its conclusion that the challenged statement was voluntary or in arriving at the conclusion it did, any inadequacy in the trial court's findings of fact is harmless beyond a reasonable doubt. *See* TEX.R.APP. P. 44.2.

Swails does not argue the trial court incorrectly resolved a disputed fact issue material to the voluntariness of her statements, nor does she challenge the trial court's conclusion that her statements were voluntary. Under these circumstances, we hold any lack of specificity in the trial court's findings is harmless beyond a reasonable doubt. *See id.* Our conclusion is further supported by the suppression hearing record, which does not reveal any disputed fact issue material to the voluntariness issue. To the contrary, the sole witness at the suppression hearing was Texas Ranger Clute Buckaloo, who unequivocally testified Swails was properly warned; she thereafter volunteered a detailed account of the events surrounding Blanke's murder with little or no prompting; she appeared to understand what she was doing and did not appear to be under the influence of any substance; and she was not coerced, threatened, deceived, or in any manner forced to make the oral statement she did. Buckaloo's testimony is similarly unequivocal regarding

STER'S THIRD INTERNATIONAL DICTIONARY 1130 (1981) ("imminent" means "ready to take place: near at hand: IMPENDING; ... hanging threateningly over one's head: menacingly near"). *See gener-*

*ally* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1988) (construe words not defined in the Penal Code "according to ... common usage").

the facts material to the voluntariness of Swails' written statement. Under the circumstances, we fail to see how the trial court could have made any more specific findings than it did, and we hold the conclusory nature of the findings is harmless beyond a reasonable doubt. *See* TEX.R.APP. P. 44.2. We therefore overrule Swails' sixth point of error and affirm the judgment.

Dissenting opinion by ALMA L. LÓPEZ, Justice

LOPEZ, Justice, dissenting

I respectfully dissent from the majority opinion because the trial court erred by failing to submit an instruction on duress in the jury charge which applied the law of duress to the specific facts of duress raised by the evidence. Accordingly, this case should have been reversed and remanded.

When a jury charge error is reviewed on appeal, an appellate court must determine: (1) whether error exists in the jury charge, and (2) whether sufficient harm was caused by the error to require reversal. *See Hutch v. State*, 922 S.W.2d 166, 170 (Tex.Crim.App. 1996). When evidence from any source raises a defensive issue, and the defendant properly requests a jury charge on that issue, the trial court must submit the issue to the jury. *See Muniz v. State*, 851 S.W.2d 238, 254 (Tex.Crim.App. 1993). A defendant is generally entitled to an affirmative defense instruction on every issue raised by the evidence, regardless of whether it is strong, weak, contradicted, unimpeached, or unbelievable. *See id.* As the majority has stated, the affirmative defense of duress arises when there is some evidence the defendant "engaged in the proscribed conduct because he was compelled to do so by the threat of imminent death or serious bodily injury to himself or another." *See* TEX.PEN.CODE.ANN. § 8.05 (Vernon 1994). In a felony prosecution, the defendant must prove by a preponderance of the evidence that she compelled to commit the offense by threat of serious bodily injury or death, and that such consequence was imminent. *See id.*

Swails's third point of error complains of error in instructing the jury on duress.

When reviewing charge errors, we must engage in a two-step analysis: first, we must determine whether error actually exists in the charge, and second, we must determine whether sufficient harm resulted from the error to require reversal. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984).

To receive due process, "[t]he law must come from the court, the facts must be decided by the jury, and the charge, to instruct the jury properly, must apply the law to the facts raised by the evidence." *Williams v. State*, 547 S.W.2d 18, 20 (Tex.Crim.App. 1977); *see also Abdnor v. State*, 871 S.W.2d 726, 731 (Tex.Crim.App.1994); *Doyle v. State*, 631 S.W.2d 732, 738 (Tex.Crim.App. 1980). The purpose of the charge is "to lead the jury to the threshold of its duty: to decide those facts." *Williams*, 547 S.W.2d at 20. As the court of criminal appeals has duly noted, the integrity of a verdict is called into question when the jury has not been properly charged on the application of the law to the facts. A failure to provide a neutral, unbiased instruction on duress leaves the jury to choose competing applications from partisan advocates. *See id.* "Consequently, an erroneous or an incomplete jury charge jeopardizes a defendant's right to a jury trial because it fails to properly guide the jury in its fact-finding function." *Abdnor*, 871 S.W.2d at 731.

### Evidence of Duress

In the instant case, there is evidence that Connie was operating under an imminent or present threat to her life. For example, in Connie's statement, she testified that she had a long abusive relationship with the perpetrator, Kevin, that included stalking her when they were no longer together. On the day of the murder, Kevin had beaten her two or three times and strangled her because she did not have any money. After Kevin beat Connie, he made her drive around in the car with him on the day of the murder. Kevin told Connie they were going to rob this old man and kill him because he wanted his money and his guns. When they got to the victim's house, Kevin went to the door first with a 2000 volt stun gun in his hand. Kevin

shocked the victim with the stun gun and then told Connie to get out of the car and help him. Kevin threatened to kill Connie if she did not help him. Connie said she went into that house because she had to. In the house, Kevin was yelling for something to strangle the victim with and Connie gave him the radio because she was in fear of her life. After the murder, when Kevin and Connie were driving toward San Antonio, Kevin yelled, screamed and terrorized Connie, and told her he would kill her, too. Kevin made Connie marry him three or four days later, so she would not testify against him.

Moreover, the expert testimony of Melissa Jay Eddy contained evidence that Connie was operating under an imminent threat to her life. The psychologist and licensed professional counselor, whose expertise is in the field of domestic violence with services to battered women, testified that Connie Swails was definitely abused by Kevin. The psychologist further testified that Connie's behavior was characteristic of someone who had been abused. Eddy testified that Kevin presented a very serious threat to Connie, possibly death "at that time." Given the circumstances of the murder, in which Connie visibly observed Kevin killing the victim and received threats, herself, if she did not assist him, it is logical that Connie felt threatened and compelled to help Kevin or risk losing her life.

The majority opinion concludes this to be insufficient to raise the affirmative defense of duress on the assumption that Kevin's threat to harm Connie if she did not comply, that he would hunt her down and kill her if she did not go inside Blanke's house, was a threat of future, not imminent, harm. Hence, any error in presenting a mere general charge on duress to the jury, if any, was harmless.

The majority's assumption implies that Connie was necessarily free to leave the

scene during the murder. There is no evidence to that effect in the record, however. The scene of the murder is located in rural Bandera County. Although the photographic exhibits suggest other lake homes in close proximity to the Blanke home, there is no testimony that any of these homes were occupied at the time of the offense so as to serve as an immediate source of aid or sanctuary. The car driven to the scene was parked next to the front door, just a few steps from where Kevin was yelling his threats of violence to Connie. There is no evidence in the record as to who controlled the keys to the car. Would a person of reasonable firmness, who had suffered three beatings that very day from him, have considered Kevin's threats and commands to present only future danger to her under these circumstances? I think not.

Moreover, in the expert opinion of Melissa Jay Eddy, Connie had every reason to believe that Kevin's threats against her were real and imminent. As she testified:

[S]o, in the context of having already been recipient of this kind of threatening, overtly and covertly, indirectly, that just kind of threatening behavior, including direct verbal threats to kill her, then in the context of a situation where she's observing him in the process of killing another individual, she would have every reason to believe, in my opinion, that this threat right then that if she didn't do exactly what he wanted her to do at that moment, that he would also turn around and kill her. She had every reason to find that threat totally credible and to be very afraid of that threat.

The evidence presented, that Connie was operating under an imminent threat to her life, raised the issue of duress. Appellant's counsel duly objected that the instruction on duress[1] the court intended to give did not

---

1. The application paragraph to the charge on duress stated:

Now, therefore, if you find from the evidence, beyond a reasonable doubt that the defendant did commit the offense of capital murder, as alleged in the indictment and hereinbefore defined in this charge, but you further find by a preponderance of the evidence that the defendant engaged in the proscribed conduct, to-wit: capital murder, because she was com-

pelled to do so by threat of imminent death or serious bodily injury to herself, and further, that such threats, if any, were such threats of force as would render a person of reasonable firmness incapable of resisting the pressure, and that defendant was in fear of imminent loss of her life or serious bodily injury if she did not participate in the capital murder and that so believing, she did participate therein,

apply the law of duress to the specific facts of this case and requested that the instruction refer to a specific threat by Kevin Swails. The trial court overruled this objection and denied the requested instruction.

### Harm Analysis

The standard to determine whether there is sufficient harm resulting from the inadequate instruction to require reversal depends upon whether the appellant objected. As there was a timely objection at the trial, we need find only "some harm" to require a reversal. *See* to Rule 81(b)(2); *Haynie v. State*, 751 S.W.2d 878 (Tex.Crim.App.1988); *see also Almanza v. State*, 686 S.W.2d at 171(error "calculated to injure the rights of the defendant" must be no more than "some harm to the accused from the error" to warrant reversal); *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App.1986) ("the presence of any harm, regardless of degree … is sufficient to require a reversal")(modifying *Almanza*); *Abdnor v. State*, 871 S.W.2d at 731–32. We may affirm this conviction *only* if no harm has occurred as a result of the charge error. *See Arline*, 721 S.W.2d at 351. Our analysis of "some harm" requires an examination of the entire trial record to determine whether appellant might have been acquitted, convicted of a lesser offense, assessed a more lenient punishment, or advantaged in some other significant manner, had the trial judge properly instructed the jury on the application of the law of duress to the facts of the case. *See LaPoint v. State*, 750 S.W.2d 180, 190 (Tex.Crim.App.1986). Where error was properly preserved at trial, any harm, regardless of the degree, is sufficient to require a reversal of the conviction. *See Birch v. State*, 948 S.W.2d 880, 885 (Tex. App.—San Antonio 1997).

The jury was only asked to consider Connie's guilt or innocence with regard to capital murder. It did not have the option to consider lesser-included offenses. Reviewing the charge on duress and the manner in which the State utilized it in its closing argument, we find the State's version of this instruction:

> It [the defense of duress] is unavailable if the actor intentionally, knowingly or reck-

lessly placed herself in a situation where she probably would become subject to compulsion; and then the charging paragraph dealing with the duress defense: If you find that, in fact, those circumstances existed, which is put in a situation where Connie Gail Landers Swails had no choice but to go in and strangle Mr. Waldo Blanke and kill him in his house, then you let her go. You acquit her.

Following the closing defense argument which described the evidence of duress, the State characterized the defense of duress as having "to do with condoning, if you will, the conduct of a defendant who's charged with … murder." Appellant's counsel objected to this characterization of duress, however, the trial court overruled the objection. The State expanded on this theme to suggest that a finding of duress is the equivalent of "a license to kill, there are very few cases that this wouldn't apply [to]." Without the benefit of an unbiased court-sanctioned version of the facts of duress to use as a guidepost, the jury heard the State argue that there was no evidence that she was in "imminent danger" and the proof of that is the fact that Connie wasn't killed, she survived the ordeal and continued to live with Kevin after the murder. The law does not require one to suffer death in order to establish duress as an excuse to criminal conduct. Indeed, if, as the evidence suggests, Kevin regularly beat Connie when she did not immediately provide what he wanted at any given moment, Connie, as a victim of domestic violence, would likely reasonably believe that danger of serious bodily injury was "near at hand." *See Bryant v. State*, 905 S.W.2d 457, 459 (Tex. App.—Waco 1995, pet. ref'd). The jury was deprived of a fair assessment of the facts raising the duress defense in the court's charge, and I would find "some harm" in that omission.

Connie Swails was entitled to a specific application of the duress instruction in the jury charge. Because the majority holds otherwise, I dissent.

then you will acquit the defendant and say by your verdict "not guilty."