Michael Dwayne MORRIS,
Jr., Appellant,

v.

STATE of Texas, Appellee.

No. 04–02–00436–CR.

Court of Appeals of Texas,
San Antonio.

Aug. 27, 2003.

Rehearing Overruled Nov. 4, 2003.

John J. Fahle, Carter & Fahle, San Antonio, for Appellant.

Kevin P. Yeary, Asst Criminal Dist. Atty., San Antonio, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, KAREN ANGELINI, Justice, and PHYLIS J. SPEEDLIN, Justice.

## OPINION

PHYLIS J. SPEEDLIN, Justice.

Michael Dwayne Morris, Jr. ("Morris") appeals his conviction for murder. In his sole issue on appeal, Morris argues that the trial court erred in admitting evidence reviewed and relied upon by his own expert because the evidence constitutes inadmissible hearsay. We affirm the trial court's judgment.

### FACTS

Morris was indicted for the murder of his grandmother, Mildred Morris ("Mildred"). He pled not guilty. The jury found Morris guilty and sentenced him to forty-five years incarceration.

At trial, Morris called and qualified Dr. Robert Taylor ("Taylor") as an expert witness in the area of police procedures and crime scene investigation techniques. On direct examination, Taylor testified in essence that the criminal investigation of Mildred's murder was not handled appropriately, he believed this type of a crime was indicative of a "sexual predator" type

of crime, and that the police never established a motive for Morris. Taylor based his opinion on data and material derived from police reports, autopsy reports, and statements of friends and family members. Included in those statements was a description of three prior incidents between Morris and his grandmother as described by Kay Melvin, a friend of the Mildred's. Kay Melvin ("Melvin") had no personal knowledge of any of these instances, but instead simply related to the police officer what she had been told by Mildred.[1]

On cross-examination and over Morris's objections, the State questioned Taylor about all three prior incidents described by Melvin. The trial court allowed Taylor to read Melvin's statement into evidence. The first incident the State questioned Taylor about occurred on May 1, 2000, when Morris masturbated in Mildred's home and then laughed at her when she told him to leave. The second incident in question occurred on January 30, 2000 when Morris assaulted Mildred after he had been sniffing paint with a friend. The third incident in question occurred September 30, 2001 when Morris broke into Mildred's home, assaulted her, and threatened her life.

### Standard of Review

We review evidentiary rulings under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex.Crim.App.2001), *Aguilera v. State*, 75 S.W.3d 60, 64 (Tex.App.-San Antonio 2002, pet. ref'd). The trial court abuses its discretion when it acts "without reference to any guiding rules and principles, or acts in a manner that is arbitrary or capricious." *Lam v. State*, 25 S.W.3d 233, 236–37 (Tex. App.-San Antonio 2000, no pet.) (citing

---

1. The record does not indicate whether Melvin's witness statement was a part of a police report or if it was an independent document.

*Montgomery v. State*, 810 S.W.2d 372, 392 (Tex.Crim.App.1990)). A trial court does not abuse its discretion if its ruling was at least within "the zone of reasonable disagreement." *Salazar*, 38 S.W.3d at 153–54.

### Hearsay and Rule 705

■ In his sole issue on appeal, Morris contends that the trial court erred in allowing the State to cross-examine defense expert, Taylor, regarding the three incidents that allegedly occurred between Morris and Mildred prior to her murder. Specifically, Morris argues the evidence should not have been admitted under Texas Rules of Evidence 705, which governs the disclosure of facts or data underlying expert opinion, and should have been excluded as inadmissible hearsay. The State responds that Melvin's statement was admissible under both Texas Rules of Evidence 703 and 705. We first address whether Morris preserved error regarding his specific complaints. The Texas Rules of Appellate Procedure require, as a prerequisite to complaining on appeal, that the record show "the complaint was made to the trial court by a timely request, objection, or motion." Tex.R.App. P. 33.1(a)(1). An objection stating one legal basis may not be used to support a different legal theory on appeal. *See Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App. 1990). With regard to the second incident described in Melvin's statement, Morris did not object at trial to the introduction of evidence concerning the paint sniffing incident; therefore, Morris has waived any complaint on appeal. *See* Tex.R.App. P. 33.1(a)(1); *Rezac*, 782 S.W.2d at 870; *Jeffley v. State*, 38 S.W.3d 847, 853 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). Similarly, the record does not reveal that Morris objected at trial on the basis that Melvin's statement regarding the first and third incidents should be excluded under

Rules 705(a) because it did not constitute underlying "facts or data" as contemplated by Rule 705. Nor did Morris object at trial that the judge was required to exclude the evidence under a balancing test or give a limiting instruction under Rule 705(d). In other words, the evidentiary rules Morris now argues on appeal were not presented to the trial judge. As a result, we cannot say the trial court abused its discretion in admitting the evidence in contravention of them. *See* Tex. R.App. P. 33.1(a)(1); *Rezac*, 782 S.W.2d at 870; *Swails v. State*, 986 S.W.2d 41, 45 (Tex.App.-San Antonio 1999, pet. ref'd).

By contrast, Morris objected at trial to Taylor's testimony regarding Melvin's description of the first and third incident on the basis of hearsay and "hearsay within hearsay," respectively. The trial court overruled Morris's objections. Accordingly, we will address whether the trial court abused its discretion in overruling Morris's hearsay objections and admitting the evidence.

■ Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex.R. Evid. 801(d). Hearsay is inadmissible unless expressly excepted or excluded from the general rule by statute or the rules of evidence. Tex.R. Evid. 802. Hearsay included within hearsay is not automatically excluded under the hearsay rule; however, it is only admissible if "each part of the combined statements conforms with an exception to the hearsay rule." Tex.R. Evid. 805. In this case, the State sought to admit Taylor's testimony based on Melvin's statement to the police that was based on Mildred's statements to Melvin. Each statement was made other than by the declarant, Taylor, while testifying at the trial or hearing. Further, the statement was offered in evidence to prove

the truth of the matter asserted, *i.e.*, that Morris had engaged in a sexual and violent manner towards Mildred prior to the murder. Therefore, we hold that the statement was hearsay. *See* Tex.R. Evid. 801(d).

Although Taylor's testimony regarding Melvin's statement was hearsay, the Texas Rules of Evidence provide that an expert may base his opinion upon facts or data that are not admissible in evidence if they are of a type reasonably relied upon by experts in the particular field. Tex.R. Evid. 703. The expert may also present testimony regarding the underlying facts and data supporting his opinion. Tex.R. Evid. 705(a). The expert may disclose these facts on direct examination, or he may be required to disclose the underlying facts or data of his opinion on cross-examination. *Id.; see also Wheeler v. State*, 67 S.W.3d 879, 883 (Tex.Crim.App.2002) (stating that "an opposing party is always entitled to cross examine an expert witness concerning the facts and data on which the expert relied in forming her conclusions or opinions"). In *Nenno v. State*, the Texas Court of Criminal Appeals held the State was entitled to impeach an expert witness during cross-examination regarding out-of-court statements appellant made to another doctor, who had interviewed appellant, where the expert had relied upon the interview in formulating his own opinion. *See Nenno v. State*, 970 S.W.2d 549, 563–564 (Tex.Crim.App.1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720, 727 (Tex.Crim.App.1999).

■ In the instant case, Morris called and qualified Taylor as an expert regarding the police investigation techniques that had been used in the case. Taylor opined that the integrity of the crime scene was lost because there was no lead investigator, which led the police to focus too quickly on Morris as a suspect and to eliminate other potential suspects. Taylor further testified that based on the material he had reviewed, he could find no motive for Morris to have committed the crime. Taylor confirmed that he relied on many documents to form his opinion, including Melvin's statement. Pertinent testimony during direct examination included the following:

[Defense Counsel]: When you're eliminating suspects, do you look for motive?

[Taylor]: Of course. Motive is always a major issue to look at. You know, it's probably the thing that tips off the suspect more than anything else.

[Defense Counsel]: Now you know, Michael Morris, Jr. is sitting on trial. Is there anything in those police reports to indicate to you there is a motive?

[Taylor]: Well, again, that was a question I kept trying to ask and answer in my mind as I read the report is what is the motive. And you have to understand motive here. I mean, these are not the actions of someone with a hot temper who just turned off-

\* \* \*

[Defense Counsel]: When you are eliminating suspects I asked about motive and I asked you was there anywhere in the reports and documents that you reviewed to explain or to show you that there is a true motive for Michael Morris, Jr.

[Taylor]: No. I didn't see that at all in the report.

[Defense Counsel]: Okay

[Taylor]: And if I can add, it's not indicative. This kind of murder is not indicative of a kind of murder, that is, from an individual that's being touted here, someone with a quick tempter. Not what I've seen.

From his direct testimony, Taylor was at the very least implying to the jury that from "reports and documents" he had reviewed, Morris did not have a motive to

kill his grandmother and the police improperly focused on Morris as the sole suspect too quickly. On cross-examination, the State then explored whether Taylor's opinions and inferences were valid in light of the underlying documents, specifically Melvin's statement. Since Melvin's statement spoke to at least two previous episodes of violence between Morris and his grandmother and Taylor relied on the statement in forming part of his opinion, the jury could weigh this when judging the credibility of Taylor as a witness and the weight to be given to his conclusions. This is proper and permissible cross-examination to attempt to discredit Taylor's conclusions and inferences. *See* Tex.R. Evid. 705(a); *Nenno*, 970 S.W.2d at 563–564. Therefore, the trial court did not abuse its discretion in allowing Melvin's statement to be read into evidence through the defense expert. Accordingly, we overrule Morris's sole issue.