

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-24-00173-CR

_____

JOHN RICHARD DUDAS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 079950-E-CR , Honorable Douglas R. Woordburn, Presiding

March 13, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Appellant, John Richard Dudas, appealed his murder conviction. The prosecution arose from his nighttime investigation of a transient, Peter Fischer, purportedly antagonizing guard dogs. The latter were behind a fence of a closed glass repair facility. Appellant noticed the situation upon leaving a nearby gathering with friends. Confrontation between he and Fischer ensued, resulting in appellant drawing a knife and striking Fischer in the neck. Fischer died from the wound. The jury apparently rejected appellant's claim of self-defense when finding him guilty of murder. The jury found him

guilty of stabbing Peter Fischer, a purported transient, in the neck while allegedly defending himself against Fischer's attack. Four issues pend for review.[1] We affirm.

### *Issue One—Sufficiency of the Evidence*

Appellant initially contests the sufficiency of the evidence underlying the guilty verdict. His effort, though, consists not of the usual attack upon whether the State proved each element of the crime, in this case, murder. *See* TEX. PENAL CODE ANN. § 19.02(b) (stating that a person commits murder when he intentionally or knowingly causes the death of an individual). Rather, he argues that the evidence fails to negate the justification of necessity. And, this is where the quandary begins for the trial court did not include that defense within its charge on guilt/innocence.

Instead, the trial court charged the jury on self-defense and rejected appellant's request to add necessity. It so decided because "the only appropriate charge with regard to that is the justification defense of self-defense, and so . . . I don't see where necessity plays – it's part of what goes in self-defense." The justification of necessity having been withheld from the jury, appellant nevertheless asks us to review the evidence "de novo" and determine whether the State failed to negate necessity. We overrule the issue for the following reason.

We begin our analysis with *Mayes v. State*, No. 07-13-00344-CR, 2014 Tex. App. LEXIS 12104 (Tex. App.—Amarillo Nov. 5, 2014, pet. ref'd) (mem. op., not designated for publication). Like appellant does here, Mayes contended the evidence was insufficient to support his conviction, which happened to be for assault. *Id.* at *12. Unlike the circumstances here, Mayes thought himself entitled to a charge on self-defense, as

---

[1] Though appellant urged six issues in his initial brief, he has since waived issues two and six. Thus, we only address issues one, three, four, and five.

2

opposed to necessity. The trial court refused the request, which refusal we ultimately held erroneous. *Id.* at *10. Mayes also posited that because the defense should have been submitted, deciding whether the evidence supported conviction obligated us to assess whether the State disproved the justification of self-defense. In his view, "the evidence must be evaluated 'evenhandedly,'" by factoring the omitted defense into the equation. *Id.* at 12. We disagreed and held: "the Court of Criminal Appeals has instructed that the *Jackson v. Virginia* standard 'is the only standard that a reviewing court should apply . . . .'" *Id.* at *12-13 (quoting *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)). That standard of review does not include factoring into the analysis a defensive issue omitted from the jury charge. We know of no authority overruling *Brooks*; nor has appellant cited us to any. So, as in *Mayes*, we reject appellant's invitation to deviate from the applicable standard of review by including an unsubmitted defensive instruction into the *Jackson* sufficiency analysis.

As for appellant's suggestion that our Court of Criminal Appeals inserted a "de novo" component into the *Jackson* standard, we find inapposite the opinion on which he relies, that is, *Lopez v. State*, 600 S.W.3d 43 (Tex. Crim. App. 2020). Simply put, he misinterprets it.

In *Lopez*, the Court of Criminal Appeals did state that: 1) "we usually view the evidence in the light most favorable to the State" when determining if the evidence proved an enhancement; and 2) "[b]ut when evidentiary sufficiency turns on the meaning of a statute, we must resort to statutory interpretation, which is a question of law that we review *de novo*." *Id*. at 45. Allusion to *de novo* review in *Lopez* encompassed the interpretation of a statute, not assessing the quantum of evidence supporting conviction. One need

3

only read the authority to which the *Lopez* court cited to realize this, i.e., *Pruett v. State*, 510 S.W.3d 925 (Tex. Crim. App. 2017) and *Liverman v. State*, 470 S.W.3d 831 (Tex. Crim. App. 2015).

In *Pruett*, the court faced the question whether fire could constitute a "deadly weapon." Resolving that entailed interpretating the statutory definition of "deadly weapon," which the court characterized as a question of law reviewed de novo. *Pruett*, 510 S.W.3d at 927. De novo was not mentioned in relationship to whether sufficient evidence illustrated that the fire was a deadly weapon.

Similarly, in *Liverman*, the court was tasked with interpreting a statute as part of the sufficiency of evidence review. Indeed, it began with reiterating *Jackson* and the standard of review announced therein. *Id.* at 835-36. Then, it said that: 1) "[i]n some cases, however, a sufficiency-of-the-evidence issue turns **on the meaning of the statute** under which the defendant has been prosecuted"; 2) "[d]oes certain conduct actually constitute an offense under the statute with which the defendant has been charged"; and 3) "[t]hat question, like all statutory construction questions, is a question of law, which we review *de novo*." *Id.* at 836. Again, the de novo standard was not made in reference to considering the quantum of evidence underlying the verdict but rather construing the statute.

The debate in *Lopez* was of the same ilk. The court had first to construe the penal statute there involved and determine what it required the State to prove. The court then explained that "[t]he question is whether enhancement under Section 22.011(f) required the State to prove that the defendant actually committed bigamy or simply that the defendant would be guilty of bigamy if he were to marry or purport to marry the victim or

4

to live with the victim under the appearance of being married." *Lopez*, 600 S.W.3d at 45. After holding "that the State does not have to prove commission of bigamy to trigger the enhancement . . . ," *id.* at 47-48, it ruled that the "court of appeals erred in holding" otherwise and for this reason "the evidence that Lopez was legally married to the victim's mother at the time of the sexual assault was sufficient for enhancement." *Id.* at 48. So, as in *Pruett* and *Liverman*, the *Lopez* court utilized de novo review to interpret a statute, not to assess the sufficiency of the evidence itself. Appellant's suggestion otherwise is disingenuous.

As for whether the evidence at bar proved murder, appellant all but conceded that issue in his brief. It showed that he thrust his knife in the victim's neck and twisted it once impaled. He did so while purporting to ward off the victim's supposed aggressions. And, the ensuing wound resulted in the victim's death. Such was more than some evidence upon which a rational fact finder could infer, beyond reasonable doubt, that appellant intentionally or knowingly caused Fischer's death. We thus overrule appellant's issue.

### Issue Three—Necessity Instruction

Next, appellant contends the trial court erred in refusing to include in the charge his requested instruction on necessity. We overrule the issue.

As previously indicated, the trial court charged the jury on self-defense in general and in relationship to the use of deadly force. In such circumstances, the defense of necessity is unavailable. *Chase v. State*, 666 S.W.3d 832, 834-35 (Tex. App.—Tyler 2023, pet. ref'd) (holding the defense of necessity unavailable when the accused utilized deadly force and received an instruction on self-defense). So, the trial court correctly

5

informed the parties that "the only appropriate charge with regard to that is the justification defense of self-defense."

### *Issue Four—Duress Instruction*

Via issue four, appellant complains of the trial court's refusal to submit an instruction on the affirmative defense of duress. Allegedly, "the evidence reflect[ed] that [appellant] made a stabbing motion at the transient because he was compelled to do so by the transient's verbal threat of imminent death to [appellant] backed up by the transient's physical actions toward him." We overrule the issue.

"It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another." TEX. PENAL CODE ANN. § 8.05(a). The requisite "[c]ompulsion . . . exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure." *Id.* at § 8.05(c). Yet, the defense is unavailable "if the actor intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion." *Id.* at § 8.05(d). Thus framing our analysis, we turn to the record.

After nightfall, appellant heard dogs barking at a glass repair business, drove to the locale to investigate, and encountered a "larger and heavier transient" striking or rattling the fence behind which the dogs barked. Prior thereto, appellant allegedly attempted to gain the attention of this "larger and heavier transient" by flicking his vehicle lights at the individual. Upon appellant's stopping within the empty parking lot, the "larger and heavier transient" walked to the passenger side of appellant's car and uttered "I'm going to f'ing kick your ass or beat your ass . . . ." Appellant did not leave. Instead, he

6

remained parked and within the vehicle, according to appellant, as the "larger and heavier" person "walked to the front of the vehicle, smacked the hood of the vehicle, and then walked to the driver's side . . . ." Again, appellant did not leave despite witnessing these additional threats of physical aggression at night in the empty lot. Instead, he exited his car. That volitional act and decision placed appellant within the realm of danger allegedly posed by the "larger and heavier" transient, i.e., Peter Fischer.

In *Swails v. State*, 986 S.W.2d 41 (Tex. App.—San Antonio 1999, pet. ref'd), Swails sought to overturn her conviction for capital murder by arguing, among other things, that the trial court erred in withholding an instruction on duress. Apparently, she helped her boyfriend kill an elderly person and then remove personalty from the decedent's home. *Id.* at 46. She so participated because her boyfriend allegedly had threatened her with death if she failed to help him. Yet, before joining in the assault, Swails sat alone in a car watching her boyfriend begin the attack. Those circumstances led the court to observe: "instead of taking this opportunity to leave the scene, [Swails] walked inside the house to a man she knew was not only capable of threatening her but who had in fact beaten her earlier in the day and who was in the process of robbing and killing an old man." *Id.* at 46. Thereafter, the court concluded there was "no evidence raising duress." *Id.*

Obviously, the circumstances in *Swails* do not mirror those at bar. Yet, we cannot escape the impact of the statement: "[b]ut instead of taking this opportunity to leave the scene, [Swails] walked inside the house to a man she knew was not only capable of threatening her but who had in fact beaten her earlier . . . ." The importance of those words reflects upon the situation at bar. Appellant had the means to leave after seeing

7

the larger, heavier Fischer taunting guard dogs at night in an empty parking lot. But, he did not. Nor did he leave or remain in the vehicle after experiencing the allegedly aggressive activities of the larger, heavier Fischer. Instead, he voluntarily left his vehicle to place himself within the danger zone which he later claimed compelled his attack upon Fischer.

We reiterate that "duress is not raised if evidence establishes the defendant 'intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion.'" *Id.* at 45-46 (quoting TEX. PENAL CODE ANN. § 8.05(d)). Simply put, appellant's own testimony deprived him of the requested defensive instruction. It established that he placed himself in the situation exposing him to the very compulsion he claims required his lethal actions. The trial court was correct to withhold the instruction on duress under the circumstances at bar.

### Issue Five—Evidence of Intent to Kill

Though written in an obtuse manner, issue five seems to attack an inaccuracy appearing in the jury charge. It concerns the definition of "intent." The trial court instructed the jury that "[a] person acts intentionally, or with intent, with respect to the result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." Given that murder focuses on the result wrought by one's conduct, the definition should have omitted the phrase "to engage in the conduct." That is, the jury should have simply been told that "[a] person acts intentionally, or with intent, with respect to the result of his conduct when it is his conscious objective or desire to cause the result." Assuming this to be a defect in the charge, however, it was not brought to the trial court's attention. So, to be reversible, the error must be egregious. *See Alcoser v. State*, 663

8

S.W.3d 160, 165 (Tex. Crim. App. 2022) (stating that where there is no timely objection to purported charge error, the record must show egregious harm). Applying that standard for harm, we overrule the issue as explained below.

First, through the charge, the court asked the jury to determine if appellant "intentionally or knowingly caused the death of an individual, namely, PETER FISCHER. . . ." So worded, it rendered superfluous that part of the definition mentioning "engage in the conduct"; instead, the court directed the jury's focus toward appellant's mens rea in relationship to causing the result, i.e., death.

Second, the State did not urge, during its closing argument, that conviction could be gained if appellant merely had the conscious objective to engage in any particular conduct. Instead, the prosecutor not only said one commits murder when he "intentionally or knowingly causes the death" but also urged that appellant "knows that [the manner he used the knife] could cause the death of Peter Fischer." That argument also directed the jury's attention to assessing whether appellant intended to cause the result, as opposed to engage in particular conduct.

As for the manner in which appellant utilized the knife, the pathologist testified that, "the knife was impaled **and then twisted** . . .it's not a single cut, but a cut and then, like, a cutting in an angle." (Emphasis added). Furthermore, the blow severed Fischer's artery. A "jury may infer that the defendant had an intent to kill his victim from his use of a deadly weapon, 'unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result.'" *Flores v. State*, No. 08-18-00065-CR, 2019 Tex. App. LEXIS 11176, at *11 (Tex. App.—El Paso Dec. 30, 2019, no pet.) (mem. op., not designated for publication) (quoting *Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim.

9

App. 1986) (en banc)). Just as the accused used a knife to stab his victim and sever an artery in *Flores*, *id.* at *12-13, appellant used a knife to stab Fischer and sever an artery. Just as the aforementioned circumstances sufficed to establish intent to kill in *Flores*, *id.*, they do so here as well. This is especially true when appellant took the extra step of twisting the blade once inserted into Fischer's neck. The latter could reasonably be interpreted by a fact finder to depict a lethally calculated maneuver.

Next, appellant did not report the supposed attack upon himself once over. He entered his vehicle, drove away, discarded the knife, drove home, and washed his clothes. When confronted with the argument that the accused in *Smith v. State*, No. 04-15-00122-CR, 2016 Tex. App. LEXIS 3792 (Tex. App.—San Antonio Apr. 13, 2016, no pet.) (mem. op., not designated for publication) lacked the requisite mens rea for murder, the court initially observed that "intent may be inferred from circumstantial evidence, including acts, words, or the conduct of the defendant." *Id.* at *11-12. It soon followed the statement with "[h]iding a murder weapon after the commission of a murder is some evidence in support of a murder conviction." *Id.* at *12-13. This authority recognizes the ability of a fact finder to reasonably view one's disposing of the murder weapon as some evidence of an intent to murder, and appellant disposed of the murder weapon.

Finally, appellant did not deny striking out at Fischer. Indeed, whether he intended to engage in particular conduct played little role at trial. He merely sought to excuse his culpability by interjecting defenses or claiming self-defense.

The aforementioned circumstances lead us to conclude that including the phrase "engage in the conduct" when defining the word "intent" did not affect the very basis of

the case, deprive the accused of a valuable right, or vitally affect a defensive theory.  *See Alcoser*, 663 S.W.3d at 165 (so defining egregious harm).

Having overruled all issues which appellant did not waive, we affirm the judgment.


Brian Quinn
Chief Justice


Do not publish.