

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00222-CR

JEFFERY LYNN PRUETT                                                      APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

## FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1310783D

----------

## OPINION

----------

Appellant Jeffery Lynn Pruett appeals his conviction and twenty-year sentence for arson. Tex. Penal Code Ann. § 28.02 (West 2011). In two issues, he challenges the sufficiency of the evidence to support the guilty finding and the deadly weapon finding. We affirm as modified.

## Factual Background

Rodney Pruett, Appellant's brother, lived with his elderly parents in their home on Osbun Street in Fort Worth. Despite the fact that Appellant also resided with their parents from time to time, Rodney's living arrangements remained a source of tension between the brothers.

After their parents died, Appellant, Rodney, and their sister Patricia Hollman each inherited a one-third interest in the family home. Appellant also moved out of the house and into a mobile travel trailer, a vehicle in which he was occasionally seen driving through the neighborhood of the home. In the meantime, Rodney and Patricia were trying to sell the family home with the intention of distributing the proceeds in equal shares to the three siblings.

On December 19, 2012, while Rodney was having lunch at a nearby restaurant, Adriana Castillo, his neighbor, saw Appellant[1] park what she described as a "big old van" in front of the house, exit the vehicle, walk behind the house, return to the vehicle, and drive away.[2] Seconds later, Castillo saw smoke emanating from the back of the residence. When she went to the backyard to investigate, she discovered that the back side of the house was on fire. Castillo immediately called the fire department, and then, with the assistance of a neighbor, she also managed to notify Rodney by phone. By the

[1]Castillo testified that she recognized him by sight as a former neighbor.

[2]Castillo testified that Appellant appeared to be holding something in his hand.

time Rodney returned to the house, two fire trucks were already at the scene fighting the blaze.

Fort Worth Fire Department Battalion Chief Justin Scrivner responded to the emergency call, along with another battalion unit. Scrivner testified that the fire appeared to have begun on the southeast corner of the house and spread to the grass nearby. Prior to his arrival, a neighbor had succeeded in putting the fire out in one area with a garden hose and when Scrivener arrived, the fire had "played out" into the yard and had started burning down. By the time the fire was finally extinguished, the house had sustained fire damage to the back exterior and smoke damage to the interior. According to Scrivner, if the fire had not been extinguished, it would have consumed the house.

Fort Worth Fire Department Arson Investigator Brad Sims testified that based upon his investigation, he believed the fire had been intentionally set. He opined that the fire began on the back side of the house and that a flammable liquid material was used as an ignition source.[3] Sims testified that the fire is "very dangerous" in three respects. First, the fire endangered not only the lives of the firefighters who responded to the call but also the lives of neighbors who could have been killed or seriously injured if it had continued to spread. Second, the heat effects caused by fire are dangerous to humans, especially if they are

---

[3]The State Fire Marshal's Office reported that the sample it received from the fire was negative for any ignitable liquid residue.

trapped in a structure with it. Finally, many of the materials that are used in residential homes give off extremely toxic poisons when burned.

## Discussion

In his first point, Appellant argues that the evidence was insufficient because of a fatal variance between the indictment, which alleged that the house was "owned by another," and the undisputed evidence at trial, which showed that the house was owned by Appellant as a tenant in common with Rodney and Patricia. Appellant contends that because the State did not prove that the house was "owned by another" as alleged, the evidence was insufficient to sustain the guilty verdict.

A person commits arson if he –

>  (a) . . . starts a fire, regardless of whether the fire continues after ignition, or causes an explosion with intent to destroy or damage:
>
>  . . . .
>
>  (2) any building, habitation, or vehicle:
>
>  (A) knowing that it is within the limits of an incorporated city or town;
>
>  . . . .
>
>  (D) knowing that it is located on property belonging to another. . . .

Tex. Penal Code Ann. § 28.02(a)(2)(A), (D) (West 2011).

The indictment alleged that Appellant "did then and there intentionally start a fire or cause an explosion by igniting a flammable or combustible material or

4

liquid with an open flame or other ignition source, with the intent to damage or destroy a habitation, *knowing said habitation was within the limits of an incorporated city or town, or knowing that the said habitation was located on property belonging to another.*"[4] [Emphasis added.] Both the indictment and charge in this case authorized the jury to convict on one of two theories of arson: (1) that Appellant knew the habitation was within the limits of an incorporated city or town or (2) that Appellant knew that the habitation was located on property belonging to another.

When the jury renders a general verdict in an offense that may be committed in one of two ways and the defendant fails to challenge the sufficiency of the evidence to support one theory, we need not consider whether the evidence is sufficient to support the other theory. *L.M.W. v. State*, 891 S.W.2d 754, 758 (Tex. App.—Fort Worth 1994, pet ref'd) (citing *Fuller v. State*, 827 S.W.2d 919, 931 (Tex. Crim. App. 1992); *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App. 1982)). The jury in this case returned a general verdict. Therefore, since Appellant did not challenge the sufficiency of the evidence to support the theory that Appellant knew that the house was located within the

---

[4]The jury was charged that

A person commits the offense of arson if he starts a fire, regardless of whether the fire continues after ignition, or causes an explosion with intent to destroy or damage a habitation *knowing that it is within the limits of an incorporated city or town or knowing that it is located on property belonging to another*. [Emphasis added.]

limits of an incorporated city or town, we need not reach Appellant's issue regarding ownership of the habitation. *See id.* We overrule Appellant's first point.

In his second point, Appellant challenges the sufficiency of the evidence to support the finding of the use of a deadly weapon, in this case, fire. Penal Code section 1.07(a)(17) defines a "deadly weapon" as:

> (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

> (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

Tex. Penal Code Ann. § 1.07(a)(17) (West Supp. 2015).

By statute, fire is not a deadly weapon per se, but it can be found to be one if it otherwise meets the definition of a deadly weapon. *Id.* § 1.07(a)(17)(B); *see also Mims v. State*, 335 S.W.3d 247, 249–50 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (concluding that fire can be a deadly weapon). The relevant inquiry here is whether the fire, as it was used by Appellant, was capable of causing death or serious bodily injury. *Mims*, 335 S.W.3d at 250 (citing *Mixon v. State*, 781 S.W.2d 345, 346–47 (Tex. App.—Houston [14th Dist.] 1989), *aff'd*, 804 S.W.2d 107 (Tex. Crim. App. 1991)). The court of criminal appeals has held that in order to sustain a deadly weapon finding, the evidence must demonstrate that (1) the object meets the definition of a deadly weapon; (2) the deadly weapon was used or exhibited during the transaction on which the felony

6

conviction was based; and (3) other people were put in actual danger. *Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014).

In our due process review of the sufficiency of the evidence to support this deadly weapon finding, we must review the record to determine whether, after viewing the evidence in the light most favorable to the finding, any rational trier of fact could have found beyond a reasonable doubt that the fire was used or exhibited as a deadly weapon. *See id.* at 493. The appellate court's duty is not to reweigh the evidence but to act as a due process safeguard ensuring only the rationality of the factfinder. *Id.* at 493–94. The evidence is sufficient to support a deadly weapon finding in this case if a rational jury could have concluded that that Appellant's use of fire posed an actual danger of death or serious bodily injury. *See id.*

According to Chief Scrivner, when the fire department arrived, a neighbor had already put out part of the fire with a garden hose, and the remaining fire had "played out" into the yard and had started burning down. There is no evidence in the record that this neighbor or Castillo, the neighbor who reported the fire, was ever placed in danger of death or serious bodily injury. Although the arson investigator testified that the lives of the firefighters had been placed "in peril" by responding to the call, he also acknowledged that this is true of any fire to which the firefighters respond as part of their work. There was no one else in the home at the time, and there is no evidence in this record that these firefighters were ever in actual danger of death or serious bodily injury. *See, e.g., Williams v.*

*State*, 946 S.W.2d 432, 435–36 (Tex. App.—Fort Worth 1997) (noting that state trooper took precautions for his own safety, as he was trained to do, and was not actually endangered when no other cars were present on interstate highway while trooper arrested driver for driving while intoxicated), *aff'd in part, rev'd in part on other grounds*, 970 S.W.2d 566 (Tex. Crim. App. 1998).

As this court has previously explained,

> The threshold question is whether, upon the evidence in the record, [the object] should be classified as a deadly weapon because of the manner in which he used or actively employed it while committing the felony. An affirmative answer to that question requires proof that in the manner of its use or intended use . . . [the object] was *capable* of causing death or serious bodily injury.
>
> To determine whether in the manner of its use or intended use [the object] was "capable" of causing death or serious bodily injury, that "capability" must be evaluated in light of the facts that actually existed while the felony . . . was committed. In other words, the "capability" must be evaluated in light of what did happen rather than the conjecture about what might have happened if the facts had been different than they were.

*Id*. at 435; *see also Brister*, 449 S.W.3d at 494; *Sierra v. State*, 280 S.W.3d 250, 254, 256–57 (Tex. Crim. App. 2009) (holding that a deadly weapon finding was justified where a rational jury could have concluded the appellant's vehicle posed an actual danger of death or serious bodily injury); *Drichas v. State*, 175 S.W.3d 795, 797–98 (Tex. Crim. App. 2005) (noting that the danger posed "must be actual, and not simply hypothetical").

No doubt, everyone involved benefitted from the prompt actions of two good neighbors who summoned the fire department and employed a garden

8

hose to suppress the grass fire. Without the neighbors' assistance, the fire could have spread beyond the boundaries of the backyard and possibly engulfed the entire structure. Appellant, too, received a fortuitous windfall from their laudable acts, because the facts—viewed, as this court must, in light of what *did* happen, rather than the conjecture about what *might have* happened—do not support the deadly weapon finding in this case. *See Brister*, 449 S.W.3d at 495 (reversing deadly weapon finding where the State "failed to show that [appellant's] use of his motor vehicle placed others in actual danger of death or serious bodily injury."); *Williams*, 946 S.W.2d at 435–36 (reversing deadly weapon finding where no other cars were present on the highway when intoxicated driver was driving 5–10 miles per hour and blocked entire lanes of traffic).

Because the evidence is insufficient to support the deadly weapon finding, we sustain Appellant's second point and order the judgment modified to delete the deadly weapon finding.

### Conclusion

Having overruled Appellant's first point but sustained his second, we affirm the judgment as modified to delete the deadly weapon finding. *See Williams v. State*, 970 S.W.2d 566, 566 (Tex. Crim. App. 1998).

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL: GARDNER, MEIER, and SUDDERTH, JJ.

9

PUBLISH

DELIVERED:  December 10, 2015