

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0251-16

**JEFFERY LYNN PRUETT, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

**KELLER, P.J., delivered the opinion of the unanimous Court.**

### <u>OPINION</u>

Appellant was convicted of arson, and the jury made a deadly-weapon finding. The question before us is whether the fire started by appellant was a deadly weapon when the fire was started with an accelerant in a residential neighborhood, was left unattended and uncontrolled by appellant, and was ultimately extinguished through the efforts of appellant's neighbors and the Fort Worth Fire Department. Because the record supports a finding that the fire was capable of causing death or serious bodily injury, we hold that the deadly-weapon finding was proper. Consequently, we reverse the judgment of the court of appeals.

# I. BACKGROUND

## A. The Case

Appellant owned a house as a tenant-in-common with his brother and sister on Osbun Street in Fort Worth. Appellant inherited his interest in the house after his parents died, and the property created tension amongst the siblings. On December 19, 2012, a neighbor saw appellant arrive at the house, walk around to the back yard, quickly return to his vehicle carrying an unidentified object, and speed away in his van. Seconds later, smoke started billowing from the back of the house.[1]

The State's expert, Brad Sims,[2] testified that the Osbun Street fire was intentionally set at the back of the house and that a flammable liquid material was used to start the fire.[3] Sims testified that the fire was a deadly weapon capable of causing death or serious bodily injury because (1) the fire endangered not only the lives of the firefighters who responded to the call but also the lives of neighbors who could have been killed or seriously injured if the fire continued to spread; (2) the heat effects of fire can be too extreme for humans to endure; and (3) the materials used in residential homes emit extremely toxic poisons when burned.[4]

When the fire department arrived on the scene, a neighbor had already put out part of the fire

---

[1] *Pruett v. State*, 484 S.W.3d 167, 168 (Tex. App.—Fort Worth 2015).

[2] Brad Sims was a firefighter for 20 years and at the time of trial was employed as an arson investigator with the City of Fort Worth Fire Department. He had eight years of experience as an arson investigator and had worked as the primary investigator on more than 500 fires.

[3] Although the investigation yielded negative results for the presence of ignitable liquid residue, Sims testified that this result is common: ignitable fluid is easily burned off by the fire, can be sprayed away by firefighters' water hoses, or can evaporate from the material before testing is completed.

[4] *Id*. at 169.

with a garden hose and the remaining fire was apparently subsiding.[5] Battalion Chief Justin Scrivner stated that "if the fire had not been extinguished, it would have consumed the house."[6] Sims stated that, as far as he knew, no one was inside the house when the fire occurred but that the firefighters who came to extinguish the fire were "in peril."[7]

### B. The Court of Appeals' Opinion

The court of appeals found that "[t]here was no one else in the home at the time, and there is no evidence in this record that these firefighters were ever in actual danger of death or serious bodily injury."[8] The court further reasoned that, because two neighbors summoned the fire department and managed to suppress the grass fire before it could spread and possibly engulf the entire structure, a deadly-weapon finding was not proper.[9] The court acknowledged the testimony that the firefighters were placed in peril but ultimately found the evidence insufficient to support a deadly-weapon finding because the fire did not actually seriously harm or kill anyone.[10] This is not the correct standard.

### II. ANALYSIS

We review the record to determine whether, after viewing the evidence in the light most

---

[5] *Id.*

[6] *Id.*

[7] *Id.* at 170.

[8] *Id.* at 171.

[9] *Id.*

[10] *Id.* ("[T]he facts—viewed, as this court must, in light of what *did* happen, rather than the conjecture about what *might have* happened—do not support the deadly weapon finding in this case.") (emphasis in original).

favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that the fire was a deadly weapon.[11] Sometimes, however, a sufficiency-of-the-evidence issue also turns on the meaning of the statute under which the defendant has been prosecuted.[12] Whether appellant's fire is a "deadly weapon" under section 1.07(a)(17)(B) involves statutory interpretation. And a statutory interpretation question is a question of law which we review *de novo*.[13]

We interpret a statute according to the plain meaning of its language unless the statute is ambiguous or the plain meaning leads to absurd results that the Legislature could not possibly have intended.[14] A "deadly weapon" is anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.[15] "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of any function of any bodily member or organ.[16] In interpreting section 1.07(a)(17)(B), we have explained that something becomes a deadly weapon because it is capable of causing death or serious bodily injury, not because it actually does so:

> The statute does not say "anything that in the manner of its use or intended use causes death or serious bodily injury." Instead the statute provides that a deadly weapon is "anything that in the manner of its use or intended use is *capable* of causing death or serious bodily injury." The provision's plain language does not require that the actor

---

[11] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L. Ed. 2d 560 (1979).

[12] *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015).

[13] *Johnson v. State*, 423 S.W.3d 385, 394 (Tex. Crim. App. 2014).

[14] *McCain v. State*, 22 S.W.3d 497, 501 (Tex. Crim. App. 2000) (citing *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[15] TEX. PENAL CODE § 1.07(a)(17)(B).

[16] TEX. PENAL CODE § 1.07(a)(46).

actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury. The placement of the word "capable" in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force.[17]

In *McCain*, we focused on the "manner of intended use" element of Section 1.07(a)(17)(B). The present matter requires us to examine the "manner of . . . use" element of the statute. But in either case, the question is whether the intended or actual use of the instrumentality in question makes it capable of causing death or serious bodily injury. We acknowledge that appellant's arson did not result in the death or serious bodily injury of another person, but that is not what the statute requires for a deadly-weapon finding.

In finding the evidence insufficient to support a deadly-weapon finding, the court of appeals relied primarily upon cases in which this Court remanded or vacated deadly-weapon findings related to motor vehicles in DWI offenses.[18] Although neither a vehicle nor fire is a deadly weapon per se, the court of appeals' reliance on the vehicle-deadly-weapon cases alone does not take into consideration important areas of this Court's deadly-weapon jurisprudence. In such cases, we have discussed how "objects [e.g., cars] that are not usually considered dangerous weapons may become

---

[17] *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (emphasis in original) (citing *Tisdale v. State*, 686 S.W.2d 110, 114–15 (Tex. Crim. App. 1984)). *See also Plummer v. State*, 410 S.W.3d 855, 858 (Tex. Crim. App. 2013) (the definition of deadly weapon "now includes *any* instrument that threatens or causes serious bodily injury, even when the instrument is not inherently or intentionally deadly.") (emphasis in original).

[18] *See Pruett v. State*, 484 S.W.3d 167 (Tex. App.—Fort Worth 2015) (citing *Brister v. State*, 449 S.W.3d 490 (Tex. Crim. App. 2014); *Sierra v. State*, 280 S.W.3d 250 (Tex. Crim. App. 2009); *Drichas v. State*, 175 S.W.3d 795, 799–800 (Tex. Crim. App. 2005); and *Williams v. State*, 946 S.W.2d 432 (Tex. App.—Fort Worth 1997) (pet. dism'd)).

so, depending on the manner in which they are used during the commission of an offense."[19] These cases involve fact-intensive inquiries into the manner in which an intoxicated driver uses a vehicle, and the sustainability of a deadly-weapon finding often depends upon officers' testimony about the variabilities of traffic patterns and the impulses of drunk drivers.[20]

But arson cases are not entirely analogous to the vehicle-as-a-deadly-weapon cases. An arsonist is not the same as an intoxicated driver, and the degree of danger and harm that each offender is capable of causing is materially different. In the case at bar, the deadly nature of the fire is not difficult to appreciate. Fire is inherently dangerous in a way that cars are not and it is capable of inflicting serious bodily harm, especially when it is intentionally started in a residential neighborhood.

This fire was dangerous because it was left unattended and because appellant used an accelerant. As a result, the fire endangered not only the lives of the firefighters who responded to

---

[19] *Drichas*, 175 S.W.3d at 799 (citing *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991).

[20] *See e.g.*, *Brister*, 449 S.W.3d at 494–95 (holding that the evidence was insufficient to support a deadly-weapon finding because a motor vehicle is not a deadly weapon per se and there was no testimony in the record that defendant operated his vehicle in a manner that was capable of causing death or serious bodily injury); *Sierra*, 280 S.W.3d at 256 (holding that the evidence was sufficient to make a deadly-weapon finding when the record established that defendant was reckless for speeding and failing and maintain control of his SUV); *Drichas*, 175 S.W.3d 795 (reversing and remanding the court of appeals' decision to delete a deadly weapon finding when the record established that defendant committed several traffic violations and caused property damage with his vehicle while leading officers on a 15-mile high-speed chase); *Mann*, 58 S.W.3d 132 (holding that, although defendant's vehicle was not used with deadly effect, it was a deadly weapon because it was capable of causing death or serious bodily injury if not for an oncoming driver's evasive maneuver); *Williams*, 946 S.W.2d at 435–36 (reversing a deadly weapon finding when evidence established that defendant was driving 5-10 miles per hour and the officer testified that there was no one on the highway for defendant to threaten or endanger).

the call but also the lives of neighbors who could have been killed or seriously injured if the fire continued to spread. The fire also posed a danger from both the heat effects and the emissions of toxic chemicals. In this case, the State adequately demonstrated that the fire that appellant started was capable of causing death or serious bodily injury.

Finally, the capability of the fire to cause death or serious bodily injury is not obviated by the fact that neighbors decided to take a water hose to the burning house or that firefighters showed up and did their job. In assessing the sufficiency of the evidence to establish serious bodily injury, we analyze the degree of risk posed by the injury as it was inflicted, not after the harm is ameliorated or exacerbated by other actions such as medical treatment.[21] We think a similar rule applies when determining whether something is a deadly weapon. The instrument in question must be analyzed according to its inherently dangerous capability when it is used during the crime—and without regard to any "windfall" gratuitously delivered through the deeds of third-party Good Samaritans.[22] However fortuitous and laudable the mitigating efforts of the neighbors and firefighters proved to be, the dangerous capability of the fire remained the same.

### III. CONCLUSION

When evidence at trial demonstrates that someone ignites combustible material to intentionally burn down a house in a residential neighborhood, a deadly-weapon finding may appropriately attach to the arson conviction when the fire is capable of causing death or serious bodily injury. That is what happened in this case. Viewed in a light most favorable to the State, the

---

[21] *Blea v. State*, 483 S.W.3d 29, 33–4 (Tex. Crim. App. 2016) (citing *Brown v. State*, 605 S.W.2d 572, 575 (Tex. Crim. App. 1980).

[22] *Pruett*, 484 S.W.3d at 171.

evidence in this case supports a finding that the fire that appellant started was a deadly weapon because it was capable of causing death or serious bodily injury.  We hold that the court of appeals erred in concluding that the evidence was insufficient to support such a finding.  We therefore reverse the decision of the court of appeals and affirm the decision of the trial court.

Delivered: January 25, 2017
Publish