

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-19-00008-CR

---

VALERIE LEE STANTON, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the County Court at Law No. 3
Travis County, Texas
Trial Court No. C-1-CR-17-500300

---

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

Valerie Lee Stanton was convicted by jury of the Class A misdemeanor offense of deadly

conduct[1] and was sentenced by the trial court to two days' confinement in the Travis County Jail.[2]

Stanton appeals, claiming that (1) the evidence is insufficient to sustain the conviction,[3] (2) the

trial court erred when it admitted certain expert testimony over her objection, and (3) she is entitled

to a new trial pursuant to Rule 34.6(f) of the Texas Rules of Appellate Procedure. Because we

find that the evidence is sufficient to support the conviction, Stanton's complaint regarding the

admission of certain expert testimony is not preserved, and Stanton is not entitled to a new trial,

we affirm the trial court's judgment.

## I.      Background

On February 22, 2017, James Etuale, a resident of the Forest Hills Apartments, was coming

home from lunch when he saw Stanton walking from a mattress fire behind a dumpster at the back

of the apartment complex. When Etuale spotted Stanton, she was about ten yards from the fire,

which was then relatively small. Etuale approached Stanton and asked her if she had called the

fire department. Stanton replied that she had not and told Etuale to let the fire burn a little longer,

that the trash was overflowing, that the complex would do nothing about it, and that someone had

---

[1]*See* TEX. PENAL CODE ANN. § 22.05(a).

[2]Originally appealed to the Third Court of Appeals in Austin, this case was transferred to this Court by the Texas Supreme Court pursuant to Section 73.001 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Third Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[3]Stanton also appeals from a judgment of conviction for criminal mischief in cause number 06-19-00009-CR. Our opinion in that cause number is issued of even date herewith.

to deal with it. Stanton expressed disregard for the houses in close proximity to the fire. When Etuale called 9-1-1, Stanton asked Etuale to tell investigators that she was with him "during the incident." In addition to the mattress and other rubble, the fire burned a tree and a six-foot privacy fence at the back of the complex that separated a residential neighborhood from the complex.

Kenneth Beerbower, also a Forest Hills resident, testified that there was no security gate at the back of the complex where mattresses, sofas, and all types of furniture had been dumped. According to Beerbower, this "mountain" of refuse had been there three or four months, and people were living in it. Although Beerbower did not see the fire, he testified that on two different occasions, Stanton threatened to burn the pile of refuse. Approximately six weeks before the fire, Stanton had been drinking and said that she was going to burn the refuse. Beerbower thought it was a joke. According to Beerbower, Stanton was very upset about the refuse pile on the day of the fire and told him that she was going to burn it. Beerbower thought Stanton was joking again. The fire happened later that same day.

Lieutenant Reynold Elmore and Captain Andy Reardon,[4] fire and arson investigators with the Austin Fire Department, investigated the fire. Reardon conducted the scene investigation and Elmore conducted the scene interviews. After speaking with Beerbower, Elmore decided to interview Stanton. Stanton told him that on the day of the fire, she was going to meet a friend for lunch at around 1:30. She told Elmore that as she was leaving for lunch, she saw Etuale and they

---

[4]Reardon had been with the fire department for twenty-four years and had been a captain for nine and one-half years. When Reardon was a lieutenant, he participated in a 180-hour fire investigator course and became a certified fire investigator. When he was promoted to the rank of captain, he underwent training at the police academy and became a certified peace officer. His fire investigator certification was then upgraded to that of arson investigator.

both noticed the fire together. When Elmore pressed her on the issue of how the fire started, Stanton then claimed that she was not there.

When Reardon arrived to conduct the origin and cause investigation, the fire was still smoldering. The fire, located in the corner of the apartment complex next to a dumpster, encompassed approximately 200 square feet. Reardon discovered the remains of burned mattresses and a wooden privacy fence. Reardon opined that a discarded cigarette would not have caused the fire because a cigarette does not generate sufficient heat to ignite wood or mattresses. Although electricity can cause a fire, there was no evidence that electrical service lines were damaged or would have thrown sparks that could have ignited the mattresses and the fence. In Reardon's opinion, the fire was caused by an open flame such as a lighter or a match. Reardon opined that the fire was not accidental and that it was dangerous because it was located approximately thirty feet from a housing area behind the apartment complex.

## II.     The Evidence Is Sufficient to Sustain the Conviction

In evaluating legal sufficiency of the evidence supporting Stanton's conviction, we must review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found, beyond a reasonable doubt, that Stanton committed the offense of deadly conduct. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the

evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.; *see Allen v. State*, 436 S.W.3d 815 (Tex. App.—Texarkana 2014, pet. ref'd).

A person commits the offense of deadly conduct if she "recklessly engages in conduct that places another in imminent danger of serious bodily injury." TEX. PENAL CODE ANN. § 22.05(a). Stanton claims that the evidence is insufficient to sustain her conviction because there is no evidence that anyone was ever placed in imminent danger of serious bodily injury.[5] In *Garcia v. State*, the Texas Court of Criminal Appeals stated, "although the Texas Penal Code does not define 'imminent,' this Court has defined that term to mean 'ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near.'" *Garcia v. State*, 367 S.W.3d 683, 689 (Tex. Crim. App. 2012) (citing *Devine v. State*, 786 S.W.3d 268, 270 (Tex. Crim. App. 1989)). In *Garcia*, the Court of Criminal Appeals held that there was no evidence to establish that a mother who took her child outside dressed only in a diaper on a fifty-eight-degree evening placed her child in imminent danger of serious bodily injury. *Id*. The Court of Criminal Appeals noted that there

---

[5]"'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (Supp.). The Texas Penal Code does not define the term "imminent."

was no evidence of how long the child had been exposed to the weather, that she was not crying, and particularly noted that the arresting officer—who had five years' experience as an EMT—did not feel it was necessary to call an ambulance for the child. *Id*. Accordingly, the Court of Criminal Appeals affirmed the lower court's decision reversing the mother's conviction for endangering a child. *Id*.

While we have not found a case addressing the question of imminent bodily injury in an arson context, in *Pruett v. State*, the Texas Court of Criminal Appeals discussed whether a defendant charged with arson had used a deadly weapon when setting fire to a house. *Pruett v. State*, 510 S.W.3d 925, 926 (Tex. Crim. App. 2017). The court's reasoning in *Pruett* is helpful in analyzing the issue in this case. In ruling that fire was a deadly weapon in *Pruett*, the Court of Criminal Appeals held, "Fire is inherently dangerous . . . and it is capable of inflicting serious bodily harm, especially when it is intentionally started in a residential neighborhood." *Id*. at 929. The Texas Court of Criminal Appeals also stated,

> This fire was dangerous because it was left unattended and because appellant used an accelerant. As a result, the fire endangered not only the lives of the firefighters who responded to the call but also the lives of neighbors who could have been killed or seriously injured if the fire continued to spread.

*Id*.

In this case, the jury heard testimony that due to the large amount of debris in the area, the fire grew rapidly from the size of a computer monitor to an area covering approximately 200-square feet in the corner of the apartment complex in no more than ten minutes. The fire consumed the six-foot-tall wooden privacy fence at the back of the complex, along with mattresses and other debris. The privacy fence was all that separated the fire from the residential housing area located

6

only thirty feet behind the complex. The fire also burned a large tree situated along the fence in front of the residential housing area. The fire crew worked to ensure that the fire did not spread to the nearby houses, which they considered "exposure" buildings and a priority for protection from the fire.

Using the court's reasoning in *Pruett*, in deciding whether anyone was in imminent danger of serious bodily injury in this case, we note that fire is inherently dangerous, especially when it is set in a residential neighborhood. Moreover, imminent harm of serious bodily injury is not limited to its imminent impact on neighboring residents, but also must be measured by its imminent impact on the firefighters charged with extinguishing it. Furthermore, in addition to the evidence cited above, the State's photograph exhibits taken after the fire was extinguished suggest that the fire in question was extensive. Given the photographic evidence, the close proximity of the fire to residential structures, the degree to which the fire spread in ten minutes, the exposure of the firefighters to serious bodily injury in extinguishing the fire, and the witness testimony, and viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found that the fire posed an imminent danger of serious bodily injury to the residents of the homes in close proximity to it. We overrule this point of error.

### III. Stanton's Complaint Regarding the Admission of Certain Expert Testimony Was Not Preserved for Appellate Review

There was no dispute at trial that Reardon was qualified as an expert witness. Stanton claims, however, that the trial court erred in permitting Reardon to testify that the fire was not accidental and was started by an open flame. Reardon testified without objection that an open flame would had to have been used to start the fire and that the most common sources of open

7

flames are matches and lighters. Reardon was then asked, "[I]n your experience as an arson investigator, a match, lighter, something like that -- generally speaking, is that an accident?" Stanton objected, stating that this testimony was "outside of [Reardon's] scope of experience and call[ed] for speculation." Before ruling on Stanton's objection, the trial court permitted Stanton to voir dire Reardon on this issue.

On voir dire outside of the jury's presence, Reardon testified that he was not aware of any specific training for what amounts to the accidental lighting of a match or a lighter as opposed to the intentional lighting of a match or a lighter. Reardon simply opined that one cannot accidentally light a match or a lighter. He further opined that starting a fire with an open flame such as that generated by a match or a lighter is an intentional rather than accidental act. Reardon testified that, based on his experience in investigating hundreds of fires, he had never seen somebody accidentally light a mattress on fire. He conceded that it was possible for somebody to pass out on a mattress and set it on fire with a crack pipe or a cigarette or by knocking over a candle; however, he stated that he had never personally seen that happen.

At the conclusion of voir dire, Stanton told the trial court that Reardon was not "going to be able as an expert to say whether . . . he can look through the forensics and say this mattress was set on fire with a lighter intentionally versus accidentally."[6] The court overruled Stanton's

---

[6]Reardon's credentials and opinions were thoroughly vetted at a pretrial *Daubert* hearing, following which Stanton requested that the State not be permitted to present expert testimony regarding the cause of the fire. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Stanton's reasoning for this request was that Reardon's opinion was based, at least in part, on inadmissible hearsay. The hearing judge overruled the request. Stanton did not raise any appellate complaints regarding that ruling. Stanton re-visited this issue at trial in front of a different judge. The trial court ruled that an expert opinion can only be based on evidence that has been introduced at trial and that Reardon could not give an opinion on whether the fire was intentionally or knowingly set.

objection and determined that Reardon could state his opinion, based on his training and experience. When the jury returned to the courtroom, Reardon testified that based on his training and experience, he did not believe that the fire could have been an accidental fire and that an open flame had been used to set the fire.

On appeal, Stanton specifically complains that the trial court erred in permitting this testimony because it failed to apply the *Kelly*[7] test. She complains that the record lacks any indication that the trial court determined whether the underlying scientific theory supporting the claim that the fire was caused by an open flame was a valid scientific theory, whether the technique applying the theory was valid, or whether the technique was properly applied to the facts presented. At trial, however, Stanton objected to the testimony at issue on the basis that it was outside of Reardon's scope of expertise and that it was speculation. She did not advise the trial court that her objection was based on the validity of the underlying scientific theory, the validity of the technique applying the theory, or the validity of the application of the technique to the facts presented. Because Stanton's appellate complaint was not made at trial, we may not address it on appeal. "The point of error on appeal must correspond or comport with the objection made at trial." *Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd) (citing *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998) (op. on reh'g)). "Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review." *Id.*; *see* TEX. R. APP. P. 33.1. We overrule this point of error.

---

[7]*Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992).

9

## IV. Stanton Is Not Entitled to a New Trial

Because the punishment phase proceedings were not recorded, Stanton seeks a reversal and remand for a new trial pursuant to Rule 34.6 of the Texas Rules of Appellate Procedure. Rule 34.6(f) provides:

> (f)      *Reporter's Record Lost or Destroyed.*  An appellant is entitled to a new trial under the following circumstances:
>
> (1)      if the appellant has timely requested a reporter's record;
>
> (2)      if, without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed . . .
>
> (3)      if the lost, destroyed, or inaudible portion of the reporter's record . . . is necessary to the appeal's resolution; and
>
> (4)      if the lost, destroyed or inaudible portion of the reporter's record cannot be replaced by agreement of the parties . . . .

TEX. R. APP. P. 34.6(f). We abated this matter to the trial court for an evidentiary hearing pursuant to Rule 34.6, subsections (e) and (f), for the purposes of (1) determining whether all portions of the record to which the parties were entitled had been provided to them and filed with this Court and (2) identifying and correcting, if possible, any inaccuracies or deficiencies in the reporter's record.

Following a hearing, the trial court issued findings of fact and conclusions of law in which it determined that, at the punishment hearing, both sides requested that the court reporter record the proceedings, but the court denied their respective requests and asked each party what sentence they sought. The trial court further found that (1) the State requested community supervision and Stanton requested that she be sentenced to time served, (2) the trial court sentenced Stanton to two

10

days' confinement in the county jail in each case,[8] (3) the trial court gave Stanton credit for time served, and (4) the trial court ordered the sentences to be served concurrently. Finally, the trial court concluded that both "parties agreed that [Stanton] received the sentence that she sought, [and] any error made by the Court's refusal to have the court reported [sic] record [of] the hearing is harmless." Consequently, the trial court found that a new punishment trial was not required. We agree.

Even assuming a record of the punishment hearing were necessary to the resolution of this appeal, the parties have agreed to the course of events that took place at the punishment trial and have further agreed that Stanton received the sentence that she requested. Consequently, Stanton is not entitled to a new trial. *See* TEX. R. APP. P. 34.6(f).

## V.        Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:        October 16, 2019
Date Decided:          November 5, 2019

Do Not Publish

---

[8]Stanton was also sentenced for her criminal mischief conviction.