Opinion filed December 30, 2021



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00373-CR

_____

## PAUL RAYLYN DWAYNE CARSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 13381-D**

## M E M O R A N D U M   O P I N I O N

The jury convicted Paul Raylyn Dwayne Carson of assault family violence. The trial court assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of ten years. Appellant challenges his sentence in three issues. We affirm.

The State charged Appellant by indictment with the following conduct:

[Appellant] then and there intentionally, knowingly, and recklessly cause[d] bodily injury to [Ysmelda Young], a person with whom the said [Appellant] has or has had a dating relationship as described by §71.0021, of the Texas Family Code, by intentionally, knowingly and recklessly impeding the normal breathing and circulation of the blood of the said [Ysmelda Young] by applying pressure to the throat and neck of the said [Ysmelda Young].

The indictment referenced "assault family violence" as the offense charged, but the indictment did not reference a specific provision of the Texas Penal Code that was applicable to the charged offense. The indictment also alleged a prior felony conviction for enhancement purposes.

The offense of assault family violence is set out in Section 22.01 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 22.01 (West Supp. 2021). At the time that Appellant committed the offense, Section 22.01 had two subsections labeled "(b-2)" that addressed the applicable punishment for the offense. The "first" subsection (b-2) provided as follows:

(b-2) Notwithstanding Subsection (b)(2), an offense under Subsection (a)(1) is a felony of the second degree if:

(1) The offense is committed against a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code;

(2) it is shown on the trial of the offense that the defendant has been previously convicted of an offense under this chapter, Chapter 19, or Section 20.03, 20.04, or 21.11 against a person whose relationship to or association with

2

the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code;[1] and

(3) the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth.

Act of May 4, 2017, 85th Leg., R.S., ch. 34, § 27 (S.B. 1576), 2017 Tex. Gen Laws 72, 81 (codified at PENAL § 22.01(b-2)) (amended 2019) (current version at Penal § 22.01(b-3)).[2]   Thus, the indictment in this case tracked the language of the first subsection (b-2) as it existed at the time of the offense.

The "second" subsection (b-2) provided as follows:

(b-2) Notwithstanding Subsection (b)(1), an offense under Subsection (a)(1) is a felony of the second degree if the offense is committed against a person the actor knows is a peace officer or judge while the officer or judge is lawfully discharging an official duty or in retaliation or on account of an exercise of official power or performance of an official duty as a peace officer or judge.

PENAL § 22.01(b-2).   This "second" subsection (b-2) was added by Act of May 23, 2017, 85th Leg., R.S. ch. 440, § 3 (H.B. 2908), 2017 Tex. Gen Laws 1163–64 (codified at PENAL § 22.01(b-2)) and continues to be designated as subsection (b-2). Both provisions became effective in 2017, before Appellant's arrest in 2018 and conviction in 2019.  As set out below, Appellant's three issues on appeal all concern the effect of the two subsections that were labeled (b-2).  We affirm Appellant's conviction and sentence.

---

[1]Appellant had at least one prior conviction for assault family violence.

[2]See Act of May 21, 2019, 86th Leg., R.S., ch. 467, § 21.001(39) (H.B. 4170) (codified at Penal § 22.01(b-3)), which provides: "Subsection (b–2), Section 22.01, Penal Code, as added by Chapter 34 (S.B. 1576), Acts of the 85th Legislature, Regular Session, 2017, is redesignated as Subsection (b–3), Section 22.01, Penal Code."

*Background Facts*

Appellant and Young began a dating relationship around April 2018. Their relationship started off well but quickly began to sour. Young stated that Appellant "tried to be overbearing, tried to pretty much tell [her] what to do every day, started cussing [her], calling [her] names, arguing with [her]." On May 2, 2018, Appellant and Young engaged in an argument at Young's home that escalated to the point where Young called the police. When Appellant learned of Young's first attempt to contact the police, he punched past Young's face, denting her refrigerator in the process. Additionally, Appellant took Young's phone away from her to prevent her from completing her 9-1-1 call and pushed her face into the refrigerator. The 9-1-1 operator called Young's phone back after the first call disconnected. Appellant did not disconnect Young's phone during the second call. Sometime during Young's second 9-1-1 call, Appellant left the apartment.

The police did not arrest Appellant following the May 2 incident. After the May 2 incident, Young and Appellant ceased their dating relationship, but the two continued to maintain contact. Young explained that she kept in contact with Appellant following the termination of their dating relationship because

> [she] wanted to know where his mentality was. [She] wanted to make sure [she] was going to be safe, he wasn't angry at something [she] had done or probably would do. [She] wanted to keep a close eye on him for [her] own peace of mind because [she] wanted to make sure [she] was safe. [She] wanted to pacify him, keep him calm, tell him whatever he wanted to hear to keep him, [she guesses], to stay on his good side.

Appellant and Young remained in contact between May 2 and May 19.

On May 19, following her shift at work and an early morning meal, Young returned to her apartment. As Young walked up to her front door, Appellant attacked Young from behind. After Appellant's attack, Young called 9-1-1. Young suffered

4

injuries to her throat due to Appellant's attempts to impede her airway. The police arrested Appellant the following day.

At the outset of Appellant's punishment hearing, the parties informed the trial court that the legislature had enacted two subsections labeled (b-2). Appellant asserted that, since the second (b-2) was enacted after the first (b-2), it superseded the first (b-2). The significance of this argument is that if the second subsection (b-2) superseded the first subsection (b-2), then Appellant was improperly sentenced for a second-degree felony, which, with Appellant's prior felony conviction, resulted in the applicable punishment range being that of a first-degree felony.

*Analysis*

Appellant challenges his sentence in three issues. In his first issue, Appellant asserts that an ex post facto violation occurred when the trial judge sentenced him pursuant to the provisions of the first subsection (b-2). In Appellant's second issue, he contends that the trial court's construction of the two statutes was "unforeseeable," which, in turn, functions like an ex post facto violation, thus violating Appellant's due process rights. In Appellant's third issue, he contends that the trial court erred when it imposed a sentence enhanced to a first-degree felony range when the applicable punishment range was that of a second-degree felony.

Lying at the heart of Appellant's three issues is a question of statutory construction. Statutory interpretation is a question of law, which we review de novo. *Pruett v. State*, 510 S.W.3d 925, 927 (Tex. Crim. App. 2017). We interpret a statute according to the plain meaning of its language unless the statute is ambiguous or the plain meaning leads to absurd results that the legislature could not possibly have intended. *Id.*

This case presents a particular question of statutory interpretation— interpreting two amendments enacted at the same session of the legislature. *See*

*Young v. State*, 14 S.W.3d 748, 752 (Tex. Crim. App. 2000). "If amendments to the same statute are enacted at the same session of the legislature, one amendment without reference to another, the amendments shall be harmonized, if possible, so that effect may be given to each." *Id.* (citing TEX. GOV'T CODE ANN. § 311.025(b) (West 2013)).[3] The two amendments at issue in this case, SB 1576 (the first (b-2)) and HB 2908 (the second (b-2)), were both enacted during the same legislative session (the 85th Regular Session), and neither amendment referenced the other. Thus, we must harmonize the two amendments, if possible, to give effect to each. "Only if the two provisions are irreconcilable will the amendment with the later date take precedence over the earlier." *Id.*; *see* GOV'T § 311.025(a).

We conclude that the two subsections labeled (b-2) can be harmonized to give effect to each. The only overlap between the two subsections is the fact that they are labeled with the same subsection number. They address different situations. The first subsection (b-2) made it a second-degree felony to commit an assaultive offense against a person with whom the accused is in, or has been in, a dating or family relationship. *See* TEX. FAM. CODE ANN. §§ 71.0021(b), 71.003, 71.005 (West 2019). The second subsection (b-2) made it a second degree-felony to commit an assault against a peace officer or judge. The legislature clearly intended to protect two different classes of victims with the two amendments. *See Hines v. State*, 515 S.W.2d 670, 675 (Tex. Crim. App. 1974) (two statutes that applied under different factual scenarios could be harmonized).

The holding in *Dodd v. State* is instructive. 650 S.W.2d 129, 130 (Tex. App.—Houston [14th Dist.] 1983, no writ). There, the only overlap or conflict between the statutes under review was the numbering system used in each. *Id.* The

---

[3]Section 311.025 is applicable to the construction of the provision of the Texas Penal Code. *See* PENAL § 1.05(b) (West 2021).

court determined that the texts of the statutes were not conflicting because the statutes dealt with "completely different subject matters." *Id.* Such is the case here. The words of the two subsections deal with different matters and the texts do not conflict. In this regard, the text of a statute is the primary focus of our analysis. *See Watkins v. State*, 619 S.W.3d 265, 271–72 (Tex. Crim. App. 2021).

Appellant is essentially asserting that the second subjection (b-2) repealed the first subsection (b-2) by implication. Repeal by implication is not favored under Texas law. *Hines*, 515 S.W.2d at 675; *Standard v. Sadler*, 383 S.W.2d 391, 395 (Tex. 1964); *Dodd*, 650 S.W.2d at 130. If the statutes in question can be harmonized, then there will be no repeal by implication. *Dodd*, 650 S.W.2d at 130; *see State v. Hannis*, No. 11-98-00268-CV, 1999 WL 33748061, at *5 (Tex. App.—Eastland 1999, no pet.) (not designated for publication). Because the text of the two subsections can be harmonized, the second subsection (b-2) did not repeal the first subsection (b-2) by implication.

Moreover, the only overlap between the two subsections is that they bear the same subsection number. This was a numbering error that the legislature corrected in the 86th legislative session. In correcting this issue, the legislature simply renumbered the first subsection (b-2) to subsection (b-3). This action indicates that the legislature had no intent to repeal either version of subsection (b-2) in the 85th legislative session, but rather, the legislature merely committed a numbering error.

Appellant's three issues on appeal are all contingent on his statutory contention that we have rejected. For example, he asserts that an ex post facto violation occurred because he was punished under a statute, the first subsection (b-2), that he contends no longer existed because of the subsequent adoption of the

second subsection (b-2).[4] Relying on his statutory construction, he asserts in his second issue that he had no notice of the punishment assessed against him. He asserts in his third issue that he was incorrectly sentenced, once again, based on his interpretation of the statute. Having determined that the statutory provision under which Appellant was sentenced remained in effect, we overrule his three issues on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY

CHIEF JUSTICE

December 30, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[4]Both the United States and the Texas Constitutions prohibit the application of any ex post facto law, and the same standard is applied under both provisions. U.S. CONST. art. I, § 10, cl. 1; TEX. CONST. art. I, § 16; *Grimes v. State*, 807 S.W.2d 582, 586 (Tex. Crim. App. 1991). The ex post facto clauses found in both constitutions prohibit four types of laws. They prohibit (1) laws that make an action done before the passing of the law, and which was innocent when done, criminal and punishable; (2) every law that aggravates a crime or makes it a greater crime than it was when committed; (3) every law that changes the punishment and inflicts a greater punishment than the law annexed to that crime when it was committed; and (4) every law that alters the legal rules of evidence and requires less, or different, testimony than the law required to convict the offender at the time of the commission of the offense. *Carmell v. Texas*, 529 U.S. 513, 521 (2000) (citing *Calder v. Bull*, 3 U.S. 386, 390 (1798)). An ex post facto analysis focuses on whether the statute assigns more severe criminal or penal consequences to an act than did the law in place when the act occurred; it is irrelevant whether the statutory change touches any vested rights. *Grimes*, 807 S.W.2d at 587 (citing *Weaver v. Graham*, 450 U.S. 24, 29 n.13 (1981)).